1

2

3

4

5

6

7

8                        IN THE UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10   GENERAL PRODUCE CO., LTD., a
     California limited partnership
11
                  Plaintiff,                    No. CIV S-08-1084 JAM EFB
12
            vs.
13
     ALEX R. THOMAS & CO., a California
14   corporation doing business as GOT FRUIT
     and RIPPLE RILEY THOMAS;
15   MENDOCINO GOLD GIFTS, LLC, a
     California limited liability company; RIPPLE      FINDINGS AND RECOMMENDATIONS
16   RILEY THOMAS, LLC, a California limited
     liability company; ALEX R. THOMAS, III, an
17   individual; STEPHEN N. THOMAS, an
     individual; and ANNE I. THOMAS,
18   [an individual],

19                  Defendants.

20   _____/

21          Previously pending on this court's law and motion calendar for December 3, 2008,[1] was

22   plaintiff's motion for entry of default judgment against all remaining defendants,[2] pursuant to

23
     _____
24          [1] This case was referred to the undersigned pursuant to Local Rule 72-302(c)(19) and 28
     U.S.C. § 636(b)(1).
25
            [2] Defendant Got Fruit was voluntarily dismissed by plaintiff on June 12, 2008.  *See*
26   Docket Nos. 5-8.

                                              1

1   Fed. R. Civ. P. 55(b)(2).  Plaintiff General Produce Company, Ltd. ("General"), was represented

2   by Daniel A. McDaniel.  No defendant appeared or was represented by counsel at the hearing.

3   Upon review of the motion, supporting documents, and plaintiff's oral argument, and good cause

4   appearing, the court now issues the following findings and recommendations.

5   BACKGROUND

6          This action proceeds under the Perishable Agricultural Commodities Act ("PACA"), 7

7   U.S.C. §§ 499a *et seq*., to recover money for the sale of produce, and to enforce payment from

8   the PACA statutory trust.  As enacted in 1930, subject to subsequent amendments and

9   implementing regulations, PACA governs the sale and purchase of "perishable agricultural

10  commodities," which are defined generally as "[f]resh fruits and vegetables of every kind and

11  character."  7 U.S.C. § 499a(b)(4).  The Act renders it unlawful for "any commission merchant,

12  dealer or broker"[3] to "fail or refuse truly and correctly to account and make full payment

13  promptly in respect of any transaction in any such commodity to the person with whom such

14  transaction is had; or to fail, without reasonable cause, to perform any specification or duty,

15  express or implied, arising out of any undertaking in connection with any such transaction; or to

16  fail to maintain the trust as required under 499e(c) of this title."  7 U.S.C. § 499b(4).

17         Section 499e(c) imposes upon the proceeds from sales of perishable agricultural

18  commodities a trust "for the benefit of all unpaid suppliers or sellers of such commodities or

19  agents involved in the transaction, until full payment of the sums owing in connection with such

20  transactions has been received by such suppliers, sellers, or agents."  7 U.S.C. § 499e(c)(2); *see*

21  *also In re San Joaquin Food Service, Inc*., 958 F.2d 938, 939 (9th Cir. 1992) ("PACA establishes

22  ─────────────────

23         [3]  A "commission merchant" "means any person engaged in the business of receiving in interstate or foreign commerce any perishable agricultural commodity for sale, on commission, or for or on behalf of another" 7 U.S.C. § 499a(b)(5).  A "dealer" "means any person engaged in

24  the business of buying or selling in wholesale or jobbing quantities . . . any perishable agricultural commodity in interstate or foreign commerce." 7 U.S.C. § 499a(b)(6).  A "broker"

25  "means any person engaged in the business of negotiating sales and purchases of any perishable agricultural commodity in interstate or foreign commerce for or on behalf of the vendor or the

26  purchaser." 7 U.S.C. § 499a(b)(7).

1   a nonsegregated trust in which a produce dealer holds produce-related assets as a fiduciary until

2   full payment is made to the produce seller").  An unpaid seller may preserve its trust claim by

3   including the statutory trust notice language on the face of each invoice.  7 U.S.C.

4   § 499e(c)(4).  Thus, the PACA trust commences by operation of law upon delivery of the

5   produce and continues until full payment for the produce has been made. 7 U.S.C. § 499e(c)(2).

6   The district courts are vested with jurisdiction to "entertain . . . actions by trust beneficiaries to

7   enforce payment from the trust . . ."  7 U.S.C. § 499e(b)(5)(i).

8          The First Amended Complaint, supported by declaration and exhibits submitted by

9   Clifford J. Rubens, plaintiff's Credit Manager, makes the following allegations.  Plaintiff opened

10  the subject account with defendants in July 7, 2005, pursuant to defendants' application for

11  credit.  *See* Exh. A to Rubens Decl. [Dckt. No. 25] (the contract), and Evidence Filing [Dckt. No.

12  28] (a more legible copy of the contract).  Defendants identified the name of their business as,

13  "Alex R. Thomas & Co. DBA Got Fruit Ripple Riley Thomas," with the "legal name" of

14  "Mendocino Gold Gifts LLC," which they characterized as a "spin off of operations of a

15  company called Alex R. Thomas & Co."  The owners/officers of the business were listed as R.

16  Thomas III, Stephen N. Thomas, and Anne I. Thomas.  *Id.*

17         The parties' contract explicitly provides that in the event of any default, defendants agree

18  "to pay interest at the rate of 1.5% per month (18% APR) on the principle balance owing, from

19  the date of such default," "to be bound by the sales terms disclosed on the sale transaction[s],"

20  and "[i]n the event suit is filed to enforce payment of all sums due under this agreement, I/We

21  agree to pay reasonable court costs, attorney fees an/or collections costs."  *Id.*

22         As alleged in the First Amended Complaint ("FAC"), plaintiff General Produce

23  Company, Ltd. ("General"), is a California limited partnership with its principal place of

24  business in Sacramento, California, engaged in the interstate wholesale business of buying and

25  selling fruits and vegetables.  FAC, ¶ 3.  Defendant Alex R. Thomas & Co., a California

26  corporation doing business as Got Fruit and Ripple Riley Thomas, and defendants Mendocino

3

1   Gold Gifts, LLC, and Ripple Riley Thomas, LLC, are California limited liability companies, and

2   are dealers, commission merchants, or other traders in perishable agricultural commodities

3   subject to PACA rules and regulations.  *Id*. at ¶¶ 4-6.  Defendants Alex R. Thomas III, Stephen

4   N. Thomas, and Anne I. Thomas are individuals, "responsible for maintenance or reimbursement

5   of the PACA trust, as either a responsible party controlling PACA assets, or as a recipient of

6   PACA assets with actual or constructive notice of the PACA trust."  *Id*. at ¶ 7.

7           Within the year preceding the filing of the First Amended Complaint, at defendants'

8   request, General delivered to defendants perishable agricultural commodities valued at

9   $81,497.81, which defendants accepted.  *Id.* at ¶¶ 10-12; *see also* Rubens Decl. at ¶ 5, and Exh.

10  B and C (unpaid-for produce was delivered from February 6 through April 3, 2008).

11  "Defendants have failed and refused to pay for the commodities, despite repeated demands."

12  FAC at ¶ 14; *see also* Rubens Decl. at ¶ 5, 8, and 9, and Exh. B (statement), C (unpaid invoices),

13  and D (defendant's partial remittance returned for insufficient funds).  "General provided timely

14  written notice of its intent to preserve trust benefits under the PACA and the regulations

15  promulgated thereto."  FAC at ¶ 15; *see also* Rubens Decl. at ¶ 6, and Exh. C (unpaid invoices

16  bearing plaintiff's notice of preservation of rights under PACA).[4]  Accordingly, "defendants

17  have received and hold in trust for General's benefit proceeds from the sale of said commodities,

18  and assets acquired with such proceeds."  FAC at ¶ 18.

19          Plaintiff alleges against all defendants causes of action for failure to maintain a PACA

20  trust, failure to pay PACA trust funds, breach of contract, and, against the individual defendants,

21  violation of written guaranty.  The complaint seeks declaratory and injunctive relief, damages in

22  the amount of $81,497.81, plus prejudgment and post-judgment interest, and attorney's fees and

23

24          [4] Each invoice bears the following preservation of rights under PACA:  "The Perishable
    Agricultural Commodities Listed on this invoice are sold subject to the statutory trust authorized
25  by section 5(c) of the Perishable Agricultural Commodities Act 1930 (7 U.S.C. § 499e(c)).  The
    seller of these commodities retains a trust claim over these commodities all inventories of food
26  or other products derived from these commodities and any receivables or proceeds from the sale
    of these commodities until full payment is received."  Rubens Decl., Exh. C.

1   costs.

2       The Clerk of Court has entered the default of Mendocino Gold as to the First Amended

3   Complaint, and, for the reasons set forth *infra*, this court will recommend entry of default as to

4   the remaining defendants on the First Amended Complaint.

5       Plaintiff now moves for default judgment against all defendants pursuant to Fed. R. Civ.

6   P. 55(b)(2).

7   DISCUSSION

8       A.  DEFAULT

9       Seeking a default judgment is a two step process.  The first involves obtaining the entry

10  of default.  That step is somewhat complicated here.  This case proceeds on the First Amended

11  Complaint filed September 19, 2008.  The sole amendment made by that complaint was to

12  substitute defendant Mendocino Gold Gifts, LLC, for defendant Got Fruit.  No other changes

13  were made in the amended complaint.

14      Defendants Alex R. Thomas & Co., Ripple Riley Thomas, LLC, Alex R. Thomas III,

15  Stephen N. Thomas, and Anne I. Thomas, were each served with the summons and *original*

16  complaint on June 2, 2008.  *See* Docket Nos. 10-13.  The Clerk of Court entered their default on

17  June 25, 2008.  *See* Docket No. 15.  Defendant Mendocino Gold Gifts, LLC, was served with the

18  summons and *amended complaint* on October 14, 2008.  *See* Docket No. 22.  The Clerk entered

19  default against Mendocino Gold on November 6, 2008.  *See* Docket No. 24.  Plaintiff's motion

20  for default judgment incorporates both sets of default.  Thus, it appears that plaintiff seeks

21  default judgment against all defendants, based upon the failure of the initially named defendants

22  to respond to either the original or amended complaint, and upon Mendocino Gold's failure to

23  respond to the amended complaint.[5]  For the following reasons, the court construes plaintiff's

24

25          [5]  This conundrum is reflected in plaintiff's motion which seeks, in its introductory
26  paragraph, default judgment against defendant Mendocino Gold, but argues throughout the
    motion that default judgment should be entered against all defendants.

motion as seeking default judgment against all defendants on the First Amended Complaint.

To date, a clerk's entry of default has not been entered as to any defendant but Mendocino Gold for failure to respond to the amended complaint.  Significantly, "[t]he amended complaint supersedes the original, the latter being treated thereafter as non-existent." *Loux v. Rhay*, 375 F.2d 55, 57 (9th Cir. 1967).  This effectively nullifies the default of the initially named defendants on the original complaint, although their failure to answer either complaint underscores their decision not to participate in this action.  Plaintiff may nonetheless obtain the entry of default of, and default judgment upon, the initially named defendants based upon their failure to respond to the amended complaint, which was properly served upon them pursuant to the requirements of Fed. R. Civ. P. 5.  *See* "Proof of Service by Mail," at p. 8 of the First Amended Complaint.  An initial entry of default may be entered either by the court or the Clerk of Court.[6]  Thus, it will be the recommendation of the undersigned that the court first enter the default of the initially named defendants (except Got Fruit, which was replaced by Mendocino Gold in the amended complaint) pursuant to Fed. R. Civ. P. 55(a), based upon their failure to respond to the First Amended Complaint and, for reasons discussed below,  immediately thereafter enter a default judgment as to all defendants[7] pursuant to Fed. R. Civ. P. 55(b)(2).

B.  <u>DEFAULT JUDGMENT</u>

The second step in the process is a motion for default motion.  Here, plaintiffs have properly moved for judgment and have demonstrated that service of process has been completed as to all defendants, and that all defendants have been served with the First Amended Complaint.

---

[6]  "Although Rule 55(a), Fed. R. Civ. P., refers to entry of default by the clerk, it is well-established that a default also may be entered by the court.  6 Moore's Federal Practice, ¶ 55.03(1) at 55-31 (1976 ed.)."  *Breuer Elec. Mfg. Co. v. Toronado Systems of America, Inc.,* 687 F.2d 182, 185 (C.A. Ill. 1982).  *Accord, Best Deals on TV, Inc. v. Naveed*, 2008 WL 2477390, 7 (N.D. Cal.2008);  *In re Burchell Enterprises, Inc.*, 2005 WL 1154302, *1 (N.D. Cal. 2005); *see also* 10 Wright & Miller, *Federal Practice & Procedure* §§ 2682, 2692 (2008).

[7]  As noted, Mendocino Gold's default on the amended complaint was entered on November 6, 2008.

*See Pacific Atlantic Trading Co. v. M/V Main Express*, 758 F.2d 1325, 1331 (9th Cir. 1985) (default judgment void without personal jurisdiction).  Moreover, no defendant has appeared in this action.

Entry of default pursuant to Fed. R. Civ. P. 55(a) effects defendants' admission of the factual allegations of the complaint, except those relating to the amount of damages.  *See* Fed. R. Civ. P. 8(b)(6) ("An allegation–other than one relating to the amount of damages– is admitted if a responsive pleading is required and the allegation is not denied"); *Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977); *Anderson v. Air West*, 542 F.2d 1090, 1093 (9th Cir. 1976).

Accordingly, pursuant to the default of each defendant, the court finds that the well pleaded allegations of the complaint state a claim for which relief can be granted, specifically, that:  (1) plaintiff preserved and perfected its statutory rights under PACA by providing written notice of such intent on its invoices to defendants (*see* 7 U.S.C. § 499e(c)(4); *In re San Joaquin Food Service, Inc., supra*, 958 F.2d at 940; *In re Marvin Properties, Inc.*, 854 F. 2d 1183, 1186 (9th Cir. 1988)); (2) defendants are dealers or retailers within the meaning of 7 U.S.C. § 499a(b); (3) defendants have failed to compensate plaintiff for the delivery of perishable agricultural commodities February 6, 2008, through April 3, 2008, in the total amount $81,497.81; (4) defendants hold this amount in trust for plaintiff pursuant to the provisions of 7 U.S.C. § 499e(c); and (5) defendants are liable to plaintiff in the principal amount of $81,497.81, under the provisions of PACA, as supported by the parties' contract and plaintiff's preservation of rights on its invoices.

Entry of default judgment remains within the sound discretion of the district court, even when the defendant is technically in default.  *See Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001); *Draper v. Coombs*, 792 F.2d 915, 924 (9th Cir. 1986); *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  In assessing whether to grant a motion for default judgment, the court must consider the following factors:

1    (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's
2    substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at
     stake in the action, (5) the possibility of a dispute concerning the material facts,
3    (6) whether the default was due to excusable neglect, and (7) the strong policy
     underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

4    *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

5        Application of the *Eitel* factors supports entry of default judgment in this action.

6    Plaintiff would be prejudiced if default judgment were not granted because it would be denied

7    the right to judicial resolution of its claims.  Plaintiff has demonstrated the merit of its claims

8    based on the well pled, and unopposed, factual allegations of the First Amended Complaint.  The

9    sum of money at stake is relatively small and legal precedent supports granting the requested

10   relief.  There is no reasonable possibility of a dispute concerning material facts because

11   defendants have declined the opportunity to answer the complaint or challenge the motion for

12   default judgment.  There is no indication that defendants' default was due to excusable neglect,

13   particularly since defendants were put on notice that their check for partial remittance was

14   returned for insufficient funds.  *See* Rubens Decl., Exh. D.  Finally, while public policy favors

15   judicial decisions on the merits, thus weighing generally against granting motions for default

16   judgment, this consideration must be balanced with the reality that where, as here, defendants

17   fail to answer the complaint, a decision on the merits is "impractical, if not impossible," *see*

18   *Elektra Ent. Group, Inc. v. Crawford*, 226 F.R.D. 388, 393 (C.D. Cal. 2005) (citations omitted).

19   Moreover, entering default judgment on the facts and law presented by this case conforms with

20   the decision that would likely be reached on the merits.

21       Thus, application of the *Eitel* factors weighs significantly in favor of granting plaintiff's

22   motion for default judgment, which this court will recommend.

23       C.  <u>DAMAGES AND INTEREST</u>

24       Under the controlling case of *Middle Mountain Land and Produce Inc. v. Sound*

25   *Commodities Inc*., 307 F.3d 1220 (9th Cir. 2002), prejudgment interest may be included in a

26   PACA trust claim if supported by a contractual right; alternatively, the court has discretion to

award reasonable prejudgment interest if such an award promotes the interests of PACA

claimants.  "[A] district court has broad discretion to award prejudgment interest to PACA

claimants under 7 U.S.C. § 499e(c)(2) . . . [A] district court may award reasonable prejudgment

interest to PACA claimants if such an award is necessary to protect the interests of PACA

claimants, and [] such an award absent contract is discretionary."  *Middle Mountain*, 307 F.3d at

1225-26.

Plaintiff seeks "the principal sum of $81,497.81, interest in the sum of $8,557.27 through

November 3, 2008, interest from November 3, 2008, to date of judgment at the rate of $40.75 per

day . . . and interest on the judgment at the rate of eighteen percent (18%) per annum."

Memorandum in Support of Motion, at p. 2.  This calculation is not explained and remains

confusing despite review of the parties' invoices and cumulative statement.  The parties

contracted, in the event of default, to a monthly finance charge of 1½ %, or 18% annually.[8]  The

invoices provided that defendants were to remit payment to plaintiff within ten days of delivery,

which is, therefore, the date of default for each unpaid invoice.  There are six dates of default,

commencing February 16, 2008 and ending April 13, 2008, and the precise calculation of interest

for each default – which would, in any case, need to be progressively combined – is confounded

by periodic credits.[9]  *See* May 1, 2008 Statement of Unpaid Account, Exh. B to Rubens Decl.

---

[8]  The parties' contract expressly provides that in the event of default, defendants agree "to pay interest at the rate of 1.5% per month (18% APR) on the principle balance owing, from the date of such default," and that defendants agree "to be bound by the sales terms disclosed on the sale transaction[s]."  Evidence Filing (Dckt. No. 28), *see also* FAC at ¶ 10; and Rubens Decl., Exh. A.  Plaintiff's invoices expressly provide [sic]: "A finance charge of 1½ % will be charged on all past due accounts which is an annual percentage of 18%.  In the event legal action is taken to collect a past due account the buyer agrees to pay all collection and or attorney fees."  Rubens Decl., Exh. C.

[9]  The following dates of default are calculated ten days past each date of delivery, for the delivery amount charged (total amount, including credits, $81,497.81):

February 16, 2008:  $14,030.75 (minus $251.14 credit)
February 18, 2008:  $  4,536.00
February 18, 2008:  $  8,747.40
February 21, 2008:  $22,338.75

This court finds both that the parties expressly contracted to payment of prejudgment interest in the event of default, and that such an award is necessary generally to protect the interests of PACA claimants.  The court finds the amount of prejudgment agreed to by the parties – 18% per annum – to be reasonable.  However, for ease of calculation, and balancing the equities of the parties and challenges of recovery, the court recommends that prejudgment interest be assessed on the full balance, beginning ten days after the last date of default, April 13, 2008.

Postjudgment interest is generally governed by 28 U.S.C. § 1961, which provides, "[s]uch interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding."  The award of postjudgment interest is appropriate in this case and will be recommended pursuant to 28 U.S.C. § 1961.

D.  ATTORNEYS FEES AND COSTS

Under *Middle Mountain,* attorney fees may be included in a PACA trust claim if supported by contractual rights or, alternatively, the attorney's efforts "'are directly responsible for the availability of the funds from the statutorily created trust.'"  *Id*., 307 F.3d at 1225 (quoting *In re Milton Poulos*, 947 F.2d 1351, 1353 (9th Cir. 1991)).

Plaintiff seeks attorneys fees in the total amount of $4908.25, based on the following: $3950.00 fees incurred pursuant to filing the instant motion for default judgment, and $958.25 fees related to the hearing and filing of subsequent documents.  Decl. of Daniel A. McDaniel, at ¶¶ 5, 6; and Supp. Decl. of Daniel A. McDaniel, at ¶ 6.  Plaintiff also seeks costs in the total amount of $530.00.  McDaniel Decl., at ¶ 6.

February 23, 2008:  $ 9,222.55 (minus $221.40 credit)
April 13, 2008:       $23,934.90 (minus $840.00 credit)

*See* May 1, 2008 Statement of Unpaid Account, Exh. B to Rubens Decl.

1    The parties agreed that defendants would pay attorney fees and costs "in the event suit is

2    filed to enforce payment of all sums due under [their] agreement," *see* Evidence Filing (Dckt.

3    No. 28), *see also* FAC at ¶ 10; and Rubens Decl., Exh. A.  Consistently, plaintiff's invoices

4    expressly provide, "[i]n the event legal action is taken to collect a past due account the buyer

5    agrees to pay all collection and or attorney fees."  Rubens Decl., Exh. C.

6    The court finds that the amounts of requested attorney fees and costs are reasonable.

7    CONCLUSION

8    In accordance with the foregoing, IT IS HEREBY RECOMMENDED that:

9    1.  The default of defendants Alex R. Thomas & Co., Ripple Riley Thomas, LLC, Alex

10   R. Thomas III, Stephen N. Thomas, and Anne I. Thomas, be entered on the First Amended

11   Complaint pursuant to Fed. R. Civ. P. 55(a).

12   2.  Plaintiff's motion for default judgment against all defendants be granted pursuant to

13   Fed. R. Civ. P. 55(b)(2).

14   3.  Plaintiff be awarded damages in the amount of $81,497.81, in addition to prejudgment

15   interest at the rate of 18% per annum, calculated on the full amount, commencing April 13,

16   2008, plus postjudgment interest pursuant to 28 U.S.C. § 1961.

17   4.  Plaintiff be awarded attorney fees in the amount of $4908.25, and costs in the amount

18   of $530.00.

19   These findings and recommendations are submitted to the United States District Judge

20   assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within ten (10)

21   days after being served with these findings and recommendations, any party may file written

22   objections with the court and serve a copy on all parties.  Such a document should be captioned

23   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

24   shall be served and filed within ten (10) days after service of the objections.  The parties are

25   advised that failure to file objections within the specified time may waive the right to appeal the

26   District Court's order.  *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*,

1  951 F.2d 1153, 1157 (9th Cir. 1991).

2  Dated:  June 29, 2009.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE